**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**
**Docket No. 38030**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2011 Unpublished Opinion No. 696** |
| | ) | |
| Plaintiff-Respondent, | ) | **Filed: November 10, 2011** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **ROBERT WAYNE WHITE,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Defendant-Appellant. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Minidoka County. Hon. Michael R. Crabtree, District Judge.

Judgments of conviction and sentences for second degree kidnapping and violation of a no-contact order, and order denying motion to withdraw guilty plea, affirmed.

Molly J. Huskey, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant. Spencer J. Hahn argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent. Rebekah A. Cude argued.

---

GUTIERREZ, Judge

Robert Wayne White appeals from his judgments of conviction and sentences after entry of a guilty plea to charges of second degree kidnapping and violation of a no-contact order. Specifically, White asserts the district court abused its discretion in denying his motion to withdraw his guilty pleas because it applied the wrong legal standard. Alternatively, White contends the unified sentence of eighteen years, with three years determinate, for kidnapping following entry of the plea is excessive in light of mitigating factors.

**I.**

**FACTS AND PROCEDURE**

White was arrested for kidnapping, burglary, and violation of a no-contact order. Leading to the arrest, White went to the residence of Candice Thomas, threw a brick through her window, and entered her house. White then forcibly brought Thomas through the house and into

1

his vehicle. He drove from the residence with Thomas and was shortly thereafter pursued by an officer who had received a dispatch that White assaulted Thomas inside the vehicle. White did not initially stop, but eventually pulled over and was arrested. At the time these events took place, White was subject to a no-contact order, issued in Cassia County, in favor of Thomas. Thus, White was charged with violation of a no-contact order along with burglary and kidnapping.

Pursuant to a plea agreement, White pled guilty to felony second degree kidnapping, I.C. §§ 18-4501(1), 18-4503, and misdemeanor violation of a no-contact order that prohibited contact between White and Thomas, I.C. § 18-920. The plea agreement stipulated that if White pled guilty to those two offenses, the burglary charge and two other separate criminal cases would be dropped. Before sentencing, however, White filed a motion to withdraw his guilty plea as to both the kidnapping charge and the violation of the no-contact order. He asserted his counsel failed to advise him on a possible "citizen's arrest" defense and also, that counsel's advice on racial bias of the jury rendered his plea involuntary. In support of the citizen's arrest defense, White offered evidence that, at the time he went to Thomas' house, his sixteen-year-old daughter was staying with Thomas. White had information that his daughter was having a sexual relationship with an eighteen-year-old man. White had sometime earlier alerted the Rupert Police Department and the Idaho Department of Health and Welfare of the alleged ongoing statutory rape, both of which declined to take action against the young man or against Thomas, as the girl's guardian. White claimed that because Thomas was aiding and abetting the felonious rape of his daughter by allowing it to happen in her home, he had a right to undertake a citizen's arrest of Thomas. Second, on the racial bias assertion, White claimed counsel advised him that he, as a Black man in a case with a White victim, would not be able to win a jury trial in Minidoka County and that such advice presented a Hobson's choice: plead guilty or proceed to a trial that would not be fair. This choice, White claimed, made the plea involuntary. The court held a hearing on the motion to withdraw, accepted briefs by the parties, and took the matter under advisement. Ultimately, the court denied the motion.

The case proceeded to sentencing where the court imposed a unified sentence of eighteen years, with a determinate period of three years, on the kidnapping charge.[1] White appeals, asserting this sentence is excessive in light of his education, military service, motivation to protect his daughter, and remorse for his actions. He also challenges the district court's order denying his motion to withdraw his guilty plea.

## II.
## DISCUSSION

### A.     Motion to Withdraw Guilty Plea

As a threshold matter in considering a motion to withdraw a guilty plea, the district court considers whether or not the defendant entered the plea voluntarily. I.C.R. 11(c); *State v. Dopp*, 124 Idaho 481, 483, 861 P.2d 51, 53 (1993); *State v. Martinez*, 89 Idaho 129, 139, 403 P.2d 597, 603 (1965). A district court's finding of voluntariness of a plea will be upheld on appeal if it can be reasonably inferred from the record as a whole. *Dopp*, 124 Idaho at 483-84, 861 P.2d at 53-54. If the court determines that it was a voluntary plea, then whether to grant a motion to withdraw a guilty plea lies in the discretion of the district court. *State v. Freeman*, 110 Idaho 117, 121, 714 P.2d 86, 90 (Ct. App. 1986).

### 1.     Voluntariness of plea

The State asserts that White's argument on the involuntary plea should not be considered on appeal because White failed to cite any authority in support thereof. *State v. Zichko*, 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). However, the record indicates that White supported the assertion with both argument and case law.

Validity of a plea depends on whether the defendant entered the plea voluntarily, knowingly, and intelligently. *Dopp*, 124 Idaho at 483, 861 P.2d at 53; *State v. Rose*, 122 Idaho 555, 558, 835 P.2d 1366, 1369 (Ct. App. 1992). A plea will not be valid unless the record, on the whole, indicates that the defendant: (1) understood the nature of the charges and was not coerced; (2) knowingly and intelligently waived his rights to a jury trial, to confront his accusers, and to refrain from incriminating himself; and (3) understood the consequences of pleading guilty. *See* I.C.R. 11(c); *State v. Colyer*, 98 Idaho 32, 34, 557 P.2d 626, 628 (1976).

---

[1]     White also received a one-year sentence for violating the no-contact order, which was to be served concurrently with the sentence for kidnapping. White does not, however, challenge that one-year sentence because it has already been served.

Furthermore, "[w]here . . . a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (internal citations omitted).

When counsel suggests that a jury will be made primarily of White persons and that it would be difficult--if not impossible--for a Black man to win his case, whether such advice renders a plea involuntary is a case of first impression for the Idaho courts. However, the United States Supreme Court and Idaho courts have ruled on related issues. First, a defendant has no right to a petit jury composed in whole or in part of persons of his own race. *Batson v. Kentucky*, 476 U.S. 79, 85 (1986). A defendant's equal protection rights in a jury trial are such that he is entitled to a jury chosen from the relevant community on a nondiscriminatory, neutral basis. *Id.* at 85-86. Secondly, defense counsel's opinion about a jury, which is a reasonable prediction of the outcome of the trial, does not amount to coercion of a defendant to accept the State's offer to plead. *Griffith v. State*, 121 Idaho 371, 373-74, 825 P.2d 94, 96-97 (Ct. App. 1992). For example in *Griffith*, the defendant's involvement in the offense was never an issue, it was only a question of intent, and so, counsel advised him on the likelihood of guilt and the possible resulting sentence. *Id.* at 373, 825 P.2d at 96. The Court found that although counsel's statement regarding the jury and outcome of the case persuaded the defendant to accept a plea bargain, it did not make the plea involuntary. *Id.* at 373-74, 825 P.2d at 96-97. A consideration for the court, in so concluding, was counsel's duty to inform a client of the practical implication of exercising his right to a trial. *Id.* Additionally, though counsel may describe an unwelcome outcome and recommend a course of action, without more, it does not amount to coercion to enter a plea. *See Williams v. State*, 113 Idaho 685, 687, 747 P.2d 94, 96 (Ct. App. 1987). These cases, when looked at together, establish that while a defendant has a right to a jury *chosen* without racial bias, a plea is not made involuntary by counsel's (1) reasonable prediction of the jury's make-up based on the composition of the community, (2) opinion about the outcome of the case based on experience, and (3) strong recommendation to plead guilty. Rather, such advice, so long as the facts demonstrate that it was not coercive, fall into a counsel's duty to inform a client of the practical implication of going to trial rather than pleading.

There is also persuasive authority that such advice about the likely outcome of a trial, even in regards to the racial make-up of the jury, does not render a guilty plea involuntary. *See*

4

*e.g. Edmonds v. Commonwealth*, 189 S.W.3d 558, 569-570 (Kent. 2006). In *Edmonds*, a Black defendant plead guilty to rape charges after his counsel advised him the jury would consist of White females that would inevitably convict him. *Id.* at 569. Edmond's trial counsel testified that this advice was given based on his experience with the racial demographics of the jurisdiction, and the court found that his advice was not misleading or inaccurate. *Id.* at 570. The court further found that "[c]oncern over the prospect of being tried by a jury with a racial composition permitted by the Constitution cannot render a subsequent guilty plea constitutionally invalid for want of voluntariness." *Id.* In other words, though the choice between a guilty plea or a trial with a potentially all-White jury was unwelcome, it did not make the choice to plead guilty involuntary.

White asserts that he was coerced into pleading guilty because his attorney advised him that a Black man in Minidoka County would be found guilty at trial. At the hearing on the motion to withdraw, White testified that defense counsel was adamant that White, as a Black man, would not be successful at trial. Defense counsel also testified to having a discussion with White where he advised that it might be difficult to win a trial because of his race, but denied telling White that he could not win. Furthermore, White's defense counsel testified that, where different races are involved in a case, race is always a discussion he undertakes with his clients because it is relevant, based on his experience. Based on defense counsel's testimony, the district court correctly ruled that this advice was "best characterized as the basis for tactical decisions made by the parties." As in *Griffith,* where the defendant's involvement in the crime was never at issue, the likelihood of a guilty verdict, in conjunction with other issues of race or intent, was a critical consideration in White's decision to plead guilty. We conclude defense counsel's advice did not render White's pleas involuntary.

### 2. Just reason

On a motion to withdraw, once the plea is determined to be voluntary, the decision to grant or deny the motion is within the district court's discretion. *Freeman*, 110 Idaho at 121, 714 P.2d at 90. Appellate review of the denial of a motion to withdraw a plea is limited to determining whether the district court exercised sound judicial discretion, as distinguished from arbitrary action. *Id.* This is done by looking at whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with

5

any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

The ability to withdraw a plea is not an automatic right; the burden rests on the defendant to demonstrate a justification for withdrawing his guilty plea. *State v. Acevedo*, 131 Idaho 513, 516, 960 P.2d 196, 199 (Ct. App. 1998). If made before sentencing, the defendant's burden is to show that there is a "just reason" for withdrawing the plea. *State v. Ward*, 135 Idaho 68, 72, 14 P.3d 388, 392 (Ct. App. 2000). The court should liberally exercise its discretion to identify such a just reason when presented. *State v. Arthur*, 145 Idaho 219, 222, 177 P.3d 966, 969 (2008). However, a motion to withdraw may still be denied if the defendant fails to present and support a plausible reason for granting the withdrawal. *State v. Akin*, 139 Idaho 160, 162, 75 P.3d 214, 216 (Ct. App. 2003); *State v. McFarland*, 130 Idaho 358, 362, 941 P.2d 330, 334 (Ct. App. 1997). In other words, to constitute a just reason, a defendant must demonstrate more than a mere assertion of innocence, which by itself is not adequate justification to withdraw a guilty plea. *State v. Rodriguez*, 118 Idaho 957, 960, 801 P.2d 1308, 1311 (Ct. App. 1990). Because an entry of a guilty plea is not a mere gesture, but a solemn act, the court must also consider why newly-asserted defenses were not presented at the time of the original pleading. *Id.* at 960-61, 801 P.2d at 1311-12. In considering the defendant's assertions to determine if they constitute a just reason, the good faith, credibility, and weight of the defendant's support of his motion to withdraw are matters for the court to decide. *State v. Knowlton*, 122 Idaho 548, 549, 835 P.2d 1359, 1360 (Ct. App. 1992).

White asserts the district court erred in denying his motion to withdraw his guilty pleas because it failed to make a just-reason analysis, focusing only on whether the plea was knowing, voluntary, and intelligent. White further asserts that he met his burden of showing a just reason and that any inquiry into the merits of his proffered defense to meet this burden was error. White's argument rests on interpreting the requirement to show a plausible reason as asking the court to look at his assertions and determine if they are reasonable or possible, not necessarily probable. On the other hand, the State contends the district court's denial properly rested primarily on the validity of the plea and the credibility of witnesses, particularly defense counsel's testimony that he believed White's defense would be unsuccessful. The State argues only where a reason is plausible, that is to say potentially meritorious, should it meet the

6

just-reason standard and White did not meet the statutory elements to invoke a citizen's arrest defense, as he was subject to the no-contact order.

Initially, we address White's argument that the district court did not apply the just-reason standard. Among other reasons offered as to why his guilty plea should be withdrawn,[2] White specifically asserted "[h]e was innocent of the charges against him because his conduct . . . was actually an exercise of a citizen's arrest of the victim." Because a mere assertion of innocence is not, by itself, adequate justification to withdraw a guilty plea, the district court properly considered the reasons why the defense was not asserted at the time of the original pleading--having already determined the plea was voluntary. In engaging in its analysis, the court then examined the evidence before it to establish whether it supported a plausible reason, and evaluated the credibility of witnesses and weight of the supporting evidence. In applying the just-reason standard to find White did not meet his burden on the motion to withdraw, the district court relied primarily on the credibility of the witnesses. In particular, the district court pointed out the discrepancies in White's sworn statements at the plea hearing when compared with his later testimony on the motion to withdraw. Notably, at the plea hearing, the district court questioned White in regards to available defenses, and when White expressed uncertainty, the district court pressed White on proceeding to trial. Ultimately, White decided to go forward with the plea and waived all defenses:

> [Court]: Now, you were indicating some uncertainty about possible defenses, or as [defense counsel] was saying to me, possible mitigation of your sentence, and those are two separate things. And the question you had for me had to do with the possibility of a defense. I can't answer that question for you, but it's one that I want you to make sure you've discussed with [defense counsel] thoroughly and completely, because if you plead guilty you waive your defenses. You give them up. Do you need any more time to visit with [defense counsel] on this issue?
>
> [White]: No, I think we're -- I'm satisfied.
>
> [Court]: All right. So then have you discussed your defenses with [defense counsel]?
>
> [White]: Yes.
>
> [Court]: Do you now today waive your legal and factual defenses to these charges?
>
> [White]: Yes, Your Honor.

---

[2] The district court, in its credibility determination, discussed *infra*, found that each of the other reasons proffered by White had been addressed during the plea colloquy, and White does not renew those arguments on appeal.

It is apparent from the record that during the plea colloquy, the facts of the case applicable to a possible citizen's arrest defense were specifically addressed:

[Court]: Is there anything about your case that you want to have prepared or investigated that has not been done?

[White's Counsel]: There have been some requests that we didn't think were connected to this. And a brief explanation: Part of this case, the mitigating factors had to do with a 16-year-old daughter that was living with the alleged victim, and she allowed, in his mind--she was 16--an 18-year-old boy to live together with them. That bothered him that they were committing statutory rape, or whatever kind, and he attempted to get the police to investigate, to prosecute, to keep that from happening. So he had made some request of the department and of police and so that was part of what led up to this situation because of his frustration.

So he had requested that we try to get some further information from the department--or the sheriff's department about a report. Things that really may apply to the child protective case, but really don't apply so much here at this point for a defense or to mitigation. We've got what we need for that. So there are things he asked us to do, but we've indicated to him that we don't feel that our appointment in this case would allow us to proceed in those areas or directions.

[Court]: Mr. White, is that correct?

[White]: Your Honor, all I can say is that my 16-year-old daughter was raped and I need some help for that. And I haven't gotten it and I'm at a roadblock. I don't know what to do at this point.

[Court]: Well, I understand the thoughts that you're having in this regards. What I'm trying to do is focus in on the defense of this case on these charges. And I understand that it's all a bigger context that this all fits in, but as far as the preparation for defense to a trial in this case, has the case been fully investigated and prepared by [defense counsel]'s office to your satisfaction?

[White]: Yes, Your Honor.

[Court]: And I understand that there are other matters at issue out there that you would like to have answers to, but that may not directly pertain to the defense of this case. In other words, if the State were presenting evidence to prove your guilt, this information would probably not be something that could be used in the trial in this case as a defense. Is that your understanding?

[White]: Yes, Your Honor.

In its order denying White's motion to withdraw, the district court relied heavily on the plea colloquy when determining the credibility of White's later statements as to why the defense was not presented earlier:

8

During the colloquy the court addressed in detail each of the issues Mr. White now raises in support of his motion to withdraw his plea (with the exceptions discussed below).[3] The court remains convinced that Mr. White entered a valid guilty plea. Therefore, the issue before the court is whether Mr. White has met his burden of demonstrating a just reason to withdraw that plea.

. . . .

Mr. White asks the court to conclude that his testimony at the hearing on his motion to withdraw his guilty plea is more credible than the answers he gave to the court's questions during the change of plea hearing. He provides no credible basis upon which the court can reach this conclusion. At the plea hearing, the court conducted an extensive, detailed, and in-depth question-answer session with Mr. White, and afforded Mr. White numerous opportunities to take more time and to request a trial. Mr. White's testimony at the change of plea hearing is entitled to more credibility and weight than his testimony at the hearing on the present motion.

In addition to credibility determinations, and in considering the assertions of innocence and the citizen's arrest defense, the district court had before it evidence that: (1) White was subject to a no-contact order in favor of Thomas; (2) the night of White's arrest, officers were dispatched on a report that White assaulted Thomas while she was in his vehicle; (3) White did not initially stop his vehicle in which he was transporting Thomas when an officer pursued him; (4) White was actually traveling in the opposite direction of the police station; and (5) defense counsel advised White that the facts of the case did not make for a strong defense that White was turning Thomas into the police. Collectively, the evidence before the district court undermined any new reasons White gave for a claim of innocence based on a citizen's arrest defense to the charge of kidnapping.

In sum, the district court interpreted the defense as a continuing assertion of innocence. In evaluating the evidence before it and in taking into account the credibility of the witnesses at the motion to withdraw hearing, the district court properly conducted a just-reason analysis, found White did not meet his burden, and acted within its discretion in denying the motion.

## B. Reasonableness of Sentence

An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus, a clear abuse of discretion.

---

[3] The only exception was the additional ground that racial advice White received made his plea involuntary. This issue has already been addressed.

*State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992).  A sentence may represent such an abuse of discretion if it is shown that under any reasonable view of the facts, the sentence was excessive considering the objectives of criminal punishment.  *State v. Stover*, 140 Idaho 927, 933, 104 P.3d 969, 975 (2005).  A sentence of confinement is reasonable, though, if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation, or retribution applicable to a given case."  *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982).  However, a sentence need not serve all the sentencing goals or weigh each one equally.  *State v. Dushkin*, 124 Idaho 184, 186, 857 P.2d 663, 665 (Ct. App. 1993).

Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest.  *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982).  When reviewing the length of a sentence, we consider the defendant's entire sentence.  *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

White was sentenced to a unified sentence of eighteen years, with three years determinate.  This sentence is well within the statutory maximum of twenty-five years.  I.C. § 18-4504.  White argues the district court failed to properly consider mitigating factors such as White's motivation to protect his daughter, remorse for his actions, education, employment history, and military service.[4]

In sentencing, the district court considered the serious nature of White's crimes, the violence involved, and the fact that he did not initially stop when he was pursued by police officers while Thomas was still in the vehicle with him.  The court also considered White's prior criminal history, especially in regards to the numerous charges involving domestic partners and previous violations of no-contact orders.  Additionally, the court noted White's education, intelligence, and employment history, and testimony of a psychological expert who testified at the sentencing hearing, all of which might support probation.  Nevertheless, the court determined the goal of retribution and deterrence of such intolerable conduct outweighed those considerations.  Under a reasonable view of the facts and circumstances of this case, the sentence

---

[4]    Though White filed an Idaho Criminal Rule 35 motion for a reduction of sentence and it was denied, White does not appeal that decision to this Court.

was not excessive when considering the objectives of criminal punishment. White has failed to establish that his sentence was an abuse of discretion.

## III.

## CONCLUSION

We conclude there exists substantial evidence in the record to support the district court's ruling that White's pleas were voluntarily made. The record also indicates the district court properly applied the just-reason standard in denying White's motion to withdraw his plea. Finally, we conclude the district court did not abuse its discretion in sentencing White. Accordingly, White's judgments of conviction and sentence as to the kidnapping charge, as well as the order denying his motion to withdraw guilty pleas, are affirmed.

Chief Judge GRATTON **CONCURS.**

Judge LANSING, **CONCURRING IN THE RESULT.**

I concur in all portions of the foregoing opinion except Section II(A)(2). I cannot agree with the majority's conclusion that statements made by White and his counsel at the plea colloquy demonstrate that he was advised concerning a possible citizen's arrest defense. While it is apparent from the colloquy that White and his attorney discussed some forms of defense, nothing in the plea colloquy discloses that there was specific consideration of citizen's arrest as a possible defense to the kidnapping charge. Therefore, I do not agree with the district court's conclusion that White's statements at his plea colloquy are inconsistent with his testimony at the hearing on his motion to withdraw the guilty plea, where he asserted that his attorney had never informed him of this potential defense. Nevertheless, I concur with the majority's determination that the other evidence before the district court relating to the circumstances of the offense show that White did not possess a plausible citizen's arrest defense to the charge of kidnapping. I also note that the testimony of White's former counsel at the hearing on the motion for withdrawal of the plea does indicate that White was specifically counseled about the potential citizen's arrest defense before he entered his guilty plea, and the district court was entitled to rely upon that testimony in denying the motion. Accordingly, I concur in the result, affirming the judgment of conviction and the order denying White's motion to withdraw his guilty plea.